IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OWNERS INSURANCE COMPANY,

    Plaintiff,

            v.

CREEKSIDE CHRISTIAN ACADEMY, INC.
and JOSHUA SHERROD, Individually and as
Natural Father and Next Friend of
J.S., a minor,

    Defendants.

Civil Action No.
1:18-cv-05411-SDG

## ORDER

This matter is before the Court on Plaintiff Owners Insurance Company's motion for summary judgment [ECF 21]. For the following reasons, Owners' motion is **GRANTED**.

I.    **BACKGROUND**

Unless otherwise noted, the following facts are not disputed by the parties or are supported by undisputed evidence in the record. Owners issued a commercial general liability insurance policy to Creekside Christian Academy, Inc., Policy No. 094618-80123994-17, with an effective term of

September 1, 2017 to September 1, 2018 ("Policy").[1] The Policy was issued and delivered to Creekside in Georgia.[2]

Under the Policy, Owners agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[3] Coverage under the Policy is triggered only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.'"[4] "Bodily injury" is defined in the Policy as "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time."[5] An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[6] The Policy does not define the term "accident." The Policy excludes coverage for an "expected or intended injury," which is defined as "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured"

---

[1] ECF 1-2.

[2] *Id.* at 3, 8.

[3] *Id.* at 115.

[4] *Id.*

[5] *Id.* at 128.

[6] *Id.* at 130.

unless the "bodily injury" results "from the use of reasonable force to protect persons or property."[7]

The Policy also contains an endorsement entitled "abuse or molestation exclusion."[8] This endorsement modifies the Policy as follows:

> This insurance does not apply to "bodily injury," "property damage," "advertising injury," or "personal injury" arising out of:
>
> (a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> (b) the negligent:
>
>   (i) employment;
>
>   (ii) investigation;
>
>   (iii) supervision;
>
>   (iv) reporting to the proper authorities, or failure to so report; or
>
>   (v) retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.[9]

On September 4, 2018, Defendant Joshua Sherrod, individually and as a natural father and next friend of J.S., a minor, filed a lawsuit against Creekside in the State

---

[7] *Id.* at 116.

[8] *Id.* at 143.

[9] *Id.*

Court of Henry County, civil action file number 18SV848JTH ("Underlying Lawsuit").[10] In the Underlying Lawsuit, Sherrod alleges that on December 11, 2017, Ashley Cox, a then-18 year old, 12th grade student at Creekside—who was employed as a manager of the school's wrestling team—inappropriately touched or groped J.S.'s penis and tried to kiss him repeatedly, despite J.S.'s protests for Cox to stop.[11] This occurred while J.S. and Cox were traveling to a wrestling match on a school bus owned and operated by Creekside.[12] Sherrod alleges that "Coach Rew"—one of the wrestling coaches—was operating the bus at the time of the incident.[13] Sherrod alleges that J.S. was under the supervision and care of Creekside and its employees at the time of the incident.[14] Sherrod asserts three causes of action against Creekside: vicarious liability (Count I); negligent hiring, retention, supervision and training (Count II); and damages (Count III).[15]

---

[10] ECF 1-1 (Complaint).

[11] *Id.* ¶¶ 2–3.

[12] *Id.*

[13] *Id.* at 5 ¶ 14.

[14] *Id.* at 3 ¶¶ 2, 6.

[15] *Id.* at 4–10.

On November 27, 2018, Owners initiated this action, asserting two counts for declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201.[16] Generally, Owners seeks a judicial declaration that it has no duty to defend or indemnify Creekside as part of its defense of the Underlying Lawsuit.[17] While Sherrod filed his Answer on January 31, 2019,[18] Creekside did not file an answer. The Clerk entered a default against Creekside on July 31, 2019.[19] On the same day, Owners filed its motion for summary judgment on both counts.[20] Sherrod responded on September 3, 2019.[21] Owners replied on September 13, 2019.[22]

---

[16] ECF 1.

[17] *Id*.

[18] ECF 12.

[19] ECF 20.

[20] ECF 21. Owners served Creekside with the motion for summary judgment by mailing a copy to its registered agent. ECF 21, at 4.

[21] ECF 25. Although Creekside did not oppose the motion for summary judgment, and the Clerk has entered a default against it, the Court is still required to evaluate the motion on its merits. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). *See also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

[22] ECF 26.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be

made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). For contract cases, "Georgia follows the traditional rule of *lex loci contractus*." *McGill v. Am. Trucking & Transp., Ins. Co.*, 77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015). Pursuant to this doctrine, "contracts are governed by the law of the place where they were 'made,' and an insurance contract is 'made' where it was delivered." *Id*. Here, it is undisputed that the Policy was "made" in Georgia because it was issued and delivered to Creekside there.[23] Thus, the Court must apply Georgia substantive law to Owners' claims.

A question of "[i]nsurance policy interpretation is appropriately decided at summary judgment." *Auto-Owners Ins. Co. v. Cribb*, No. 2:17-cv-106-RWS, 2019 WL 451555, at *4 (N.D. Ga. Feb. 5, 2019) ("[T]he interpretation of an insurance policy,

---

23   ECF 1-2, at 3, 8.

including the determination and resolution of ambiguities, is a question of law for the court to decide.") (*citing Giddens v. Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006)). *See also* O.C.G.A. § 13-2-1 ("The construction of a contract is a question of law for the court."). The Court's mandate is to "ascertain the parties' intention by examining the contract as a whole." *Lyons v. Allstate Ins. Co.*, 996 F. Supp. 2d 1316, 1319 (N.D. Ga. 2014).

"In Georgia, ordinary rules of contract construction govern the interpretation of insurance policies." *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir. 1996). "As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." *Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262 (1996). *See also Giddens*, 445 F.3d at 1297 ("Where the language of the contract is unambiguous and only one reasonable interpretation is possible, the contract must be enforced as written."); *Macon-Bibb Cty. Hosp. Auth. v. Cont'l Ins. Co.*, 196 Ga. App. 399, 401 (1990) ("The words used in policies of insurance . . . bear their usual and common significance, and policies of insurance are . . . to be construed in their ordinary meaning.") (internal citation omitted). Put another way, "a word or phrase is ambiguous only when it is of

uncertain meaning, and may be fairly understood in more ways than one." *W. Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (2004). Any "[e]xceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Cincinnati Ins. Co. v. Page*, 188 Ga. App. 876, 877–78 (1988).

## III. DISCUSSION

Owners requests the Court enter summary judgment on both of its declaratory judgment claims. "The critical issue in a declaratory judgment action to determine the parties' obligations with respect to a liability insurance policy is whether the underlying suit alleges a claim that is covered by the policy." *State Farm Mut. Auto. Ins. Co. v. Myers*, 316 Ga. App. 152, 153 (2012). The duty of an insurer to "defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy . . . the allegations of the complaint are looked to [ ] determine whether a liability covered by the policy is asserted." *Great Am. Ins. Co. v. McKemie*, 244 Ga. 84, 85 (1979). *See also Littrell v. Colony Ins. Co.*, 228 Ga. App. 552, 553 (1997) ("An insurer's duty to defend is determined by comparing the nature of the allegations in the complaint with the policy provisions."). If the complaint "does not assert any claim

that could fall within the policy's coverage provisions, the insurer is justified in refusing to defend." *Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C.*, 592 F. App'x 876, 882 (11th Cir. 2015). Without a duty to defend, "there is no duty to indemnify." *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014) (*citing Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315, 317 (2007)).

### a.    Owners Is Entitled to Summary Judgment on Count I.

Owners' first declaratory judgment claim seeks a declaration that it is not obligated to defend or indemnify Creekside because the Underlying Lawsuit seeks "damages [that] did not result from an 'occurrence,' defined as an 'accident,' and the Policy makes clear that there is no coverage for damages for 'bodily injury' that do not result from an 'occurrence.'"[24]

Georgia law is well-settled that where an "accident" is not defined in an insurance policy, it is construed "to signify an unintended happening rather than one occurring through intention or design." *Owners Ins. Co. v. James*, 295 F. Supp. 2d 1354, 1363 (N.D. Ga. 2003) (*citing Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 421 (1995); *Thrif–Mart, Inc. v. Commercial Union Assurance Cos.*, 154 Ga. App. 344, 346 (1980)). "Accident" and "intention" are interpreted as

---

24    ECF 21-1.

converse terms, and "where an act is intentional, it does not constitute an 'accident' as that term is defined in an insurance policy." *James*, 295 F. Supp. 2d at 1363. Since an intentional act cannot qualify as an "accident," the "inquiry must focus on the intention behind the act that caused the unexpected event." *IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co.*, 797 F. Supp. 2d 660, 664 (D. Md. 2011) (applying Georgia law).

The conduct forming the basis of Sherrod's claims in the Underlying Lawsuit is Cox's alleged sexual harassment of J.S. In resolving similar insurance coverage disputes, Georgia courts have held that allegations of sexual harassment or molestation constitute "intentional conduct," and thus "it cannot be said that any resulting bodily injury to plaintiffs was unintended . . . . [and] the assertions of liability by plaintiffs do not fall with the policy's definition of an 'occurrence.'" *Presidential Hotel v. Canal Ins. Co.*, 188 Ga. App. 609, 611 (1988). *See also O'Dell v. St. Paul Fire & Marine Ins. Co.*, 223 Ga. App. 578, 580 (1996) ("Given the allegations that O'Dell committed sexual harassment and assault and battery, which are by their nature intentional, we cannot conclude that bodily injury, if any, was caused by an accident."). Since Cox's alleged conduct was intentional, it does not qualify as an "accident"—and therefore cannot be an "occurrence"—under the Policy.

These express terms are not ambiguous and must be afforded their literal meaning. Sherrod's allegations in the Underlying Lawsuit bolster this conclusion.[25]

Cox's alleged intentional conduct also forecloses coverage for the derivative claims of vicarious liability and negligent hiring, retention, supervision, and training in the Underlying Lawsuit. Indeed, but for Cox's alleged acts, there would be no alleged harm or derivative claims. Georgia law embraces this position. *IFCO Sys.*, 797 F. Supp. 2d at 665 (*citing O'Dell*, 223 Ga. App. at 580) ("When an insurance policy covers only 'accidents,' the policy will not, absent other policy language to the contrary, cover claims arising from the intentional acts of an insured's employees. Moreover, such a policy will also not extend to negligence claims where the insured-employer's alleged negligence is related to the intentional acts of an employee.").

Sherrod's arguments to the contrary are unpersuasive. Pointing to the "separation of insureds" provision,[26] Sherrod argues that the plain language of the Policy makes clear that it is Creekside's intent—not Cox's—that controls

---

[25] ECF 1-1, ¶ 27 ("Defendant Creekside Christian Academy, Inc. and/or its employees had actual knowledge of the negligent, reckless and *intentional* conduct of Ashley Cox.") (emphasis added).

[26] ECF 1-2, at 128.

whether Owners has an obligation to defend or indemnify Creekside.[27] To be certain, the "separation of insureds" section requires that each insured be treated separately for the purposes of coverage. However, this does not automatically imbue Creekside with coverage or override the Policy's requirement that an injury stem from an "occurrence." Sherrod does not dispute that the claims in the Underlying Lawsuit are based on, and would not exist but for, Cox's alleged intentional conduct. He fails to otherwise demonstrate how they qualify for coverage under the Policy. Such arguments are insufficient to preclude summary judgment. *H.S.I. Fin. Servs., Inc.*, 266 Ga. at 262 ("[B]y its express terms, the exclusionary clause is focused solely upon the genesis of HSI's claims—if those claims arose out of Page's culpable conduct, as they did, then coverage need not be provided."); *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215 (1998).

Therefore, based on the plain language of the Policy, Owners is entitled to summary judgment on Count I. Owners has no obligation to defend or indemnify Creekside in the Underlying Lawsuit because the claims are not covered by the Policy.

---

27   ECF 25, at 5–6.

### b.     Owners Is Entitled to Summary Judgment on Count II.

Owners' second declaratory judgment claim seeks a declaration that it is not obligated to defend or indemnify Creekside because "there is no coverage for damages [under the Policy] because of 'bodily injury,' 'property damage,' 'advertising injury' or 'personal injury' arising out of the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured."[28] Put another way, assuming Cox's conduct in the Underlying Lawsuit qualifies as an "accident"—and thus an "occurrence" under the Policy—Owners would, nonetheless, not be required to defend nor indemnify Creekside because Sherrod's allegations of sexual harassment are expressly excluded from coverage under the Policy.

In Georgia, "[a]n insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." *Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co.*, 208 Ga. App. 37, 38 (1993) (*citing Lofton v. State Farm Mut. Auto. Ins. Co.*, 192 Ga. App. 154, 154 (1989)). "Every written provision of an insurance contract must be given its apparent meaning and effect." *Hooters of Augusta, Inc. v. Am. Glob.*

---

[28]   ECF 1, ¶ 31.

*Ins. Co.*, 272 F. Supp. 2d 1365, 1378 (S.D. Ga. 2003). The Court must give full "effect . . . to all of [a contract's] provisions, including all endorsements attached thereto." *Utica Mut. Ins. Co. v. Dunn*, 106 Ga. App. 877, 878 (1962).

Here, the Underlying Lawsuit is premised on Sherrod's allegations that Cox—as an employee of Creekside—repeatedly touched, groped, and kissed J.S. while J.S. was under the supervision and care of Creekside.[29] Treating these allegations as true, the Underlying Lawsuit contends such conduct qualifies as child molestation under Georgia law.[30] O.C.G.A. § 16-6-4 ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."); *Thomas v. Georgia*, 324 Ga. App. 26, 28 (2013) (holding jury could have found essential elements of child molestation from defendant inappropriately kissing child victim).

---

[29] ECF 1-1, at 1–3.

[30] *Id*. The Court emphasizes that it expresses no opinion on whether Cox's alleged conduct qualifies as child molestation under Georgia law and is only treating Sherrod's allegations in the Underlying Complaint as true for purposes of this motion.

Pursuant to the plain and unambiguous language of the "abuse or molestation exclusion," Owners is not required to defend or indemnify Creekside for "bodily injury" arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured."[31] Moreover, Owners is not required to provide coverage for the "negligent (i) employment; (ii) investigation; (iii) supervision; (iv) reporting to the proper authorities, or failure to so report; or (v) retention" of a person for whom Creekside was legally responsible.[32] Courts interpreting similar endorsements have found them to be clear, unambiguous, and enforceable. *See Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc.*, 771 F. Supp. 2d 1336, 1344 (S.D. Fla.) ("Because the Does' negligence claims against Chabad House are precluded by the abuse or molestation exclusion, American Empire is not obligated to defend the Does' underlying suit."). The Court must give full effect to this exclusion.

Sherrod asserts that summary judgment is inappropriate, and coverage should not be denied, because the exclusion does not apply to the claims of vicarious liability premised on Coach Rew's—not Cox's—alleged conduct in the

---

[31] ECF 1-2, at 143.

[32] *Id.*

Underlying Lawsuit, as there are no allegations of harassment or molestation against Rew.[33] At a minimum, Sherrod argues, this creates an ambiguity in the Policy that must be construed against Owners sufficient to deny summary judgment. Sherrod's contentions, however, ignore the express language of the exclusion. Paragraphs (a) and (b) of the exclusion are connected by the disjunctive "or" and serve as "separate and independent bases to exclude coverage." *Am. Empire Surplus Lines Ins. Co.*, 771 F. Supp. 2d at 1341. The Underlying Lawsuit alleges that J.S. was under the supervision and care of Creekside's employees—including Rew—at the time he was allegedly molested.[34] This ends the inquiry, as the Policy excludes coverage for the actions "by anyone [*i.e.*, Cox] of any person [*i.e.*, J.S.] while in the care, custody, or control of any insured [*i.e.*, Creekside and Rew]."[35] Sherrod's attempt to shift the Court's focus to Rew's conduct in a vacuum, without reference to the exclusion as a whole, does not change the result.

Therefore, under the plain language of the Policy, Owners is entitled to summary judgment on Count II. Owners has no obligation to defend or indemnify Creekside in the Underlying Lawsuit because the claims are excluded from

---

[33] ECF 25, at 11–13.

[34] ECF 1-1, at 1–3.

[35] ECF 1-2, at 143.

coverage by the endorsement. Moreover, since Owners is not obligated to provide coverage for the substantive claims asserted by Sherrod in the Underlying Lawsuit, it is not obligated to provide coverage to Creekside on Sherrod's claims for punitive damages or attorneys' fees. *See Bituminous Cas. Corp.*, 249 Ga. App. at 534; *Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc.*, 269 Ga. 691, 692 (1998).

### IV.   CONCLUSION

Owners' motion for summary judgment [ECF 21] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Owners. Each party shall bear its own costs. The Clerk is **DIRECTED** to mail a copy of this Order to Creekside.

**SO ORDERED** this the 23rd day of March 2020.

Steven D. Grimberg
United States District Court Judge